*New-Haven,*
July, 1850.

Merriam
*v.*
Hartford and
New-Haven
R. R. Co.

MERRIAM *against* THE HARTFORD AND NEW-HAVEN
RAIL-ROAD COMPANY.

In order to charge a common carrier for the loss of property, it is necessary that it should be delivered to him, or his agent, for transportation. But such delivery may be either actual or constructive.

If a common carrier agree, that property intended for transportation by him, may be deposited at a particular place, without any express notice to him, such deposit merely, would amount to constructive notice, and be a sufficient delivery.

And such agreement may be shown, by proof of a constant practice and usage by the carrier, to receive property left for transportation, at a particular place, without any special notice of such deposit.

Where goods were delivered, in the usual manner, for transportation, by a common carrier, on his private dock, and in his exclusive use, for the purpose of receiving property to be transported by him; it was held, that such delivery was a good delivery to the carrier, to render him liable for the loss of the goods, although neither he, nor his agent, was otherwise notified of such delivery.

Where the defence to an action against a common carrier for the loss of goods, was placed solely on the ground of a want of notice to him of delivery; and the court instructed the jury, that the delivery, if in accordance with the usage claimed to be proved by the plaintiff, was sufficient, without submitting to the jury the question of fact, whether such usage influenced the plaintiff in his conduct; it was held, that the charge was not exceptionable, by reason of such omission.

Under the late statute, regarding the competency of witnesses, the wife of a party is a competent witness in his behalf.

Though by the general rule, a witness cannot be supported, by evidence of his general character as to truth, except after a general impeachment of it; yet where the witness is in the situation of a stranger, such evidence is admissible, without such previous impeachment.

THIS was an action on the case for negligence on the part of the defendants, in the transportation and delivery of certain goods belonging to the plaintiff. The cause was tried, on the general issue, at *New-Haven, January* term, 1850.

On the trial, it was proved and admitted, that the defendants were common carriers of goods by steam-boat, from *New-York* to *New-Haven*, and from thence, by rail-road, to *Meriden*, in this state; and that a steam-boat, called *The Commodore*, belonging to the defendants, and used in their business, usually lay alongside a dock in *Peck-slip*, when in the city of *New-York;* which dock, the plaintiff claimed to have proved, was the private dock of the defendants. The plaintiff also claimed and offered evidence to prove, that said dock

*New-Haven,*
July, 1850.

Merriam
*v.*
Hartford and
New-Haven
R. R. Co.

used by the defendants, was fenced off from the adjoining street, and that there were two gates in the fence—one for the admission of passengers, and the other for carts carrying freight to and from the steam-boat; but these gates were never kept locked or fastened; that a shed was placed over the *South* half of said dock, extending about half way down from the fence to the pier; which shed was boarded up on the *Northerly* side, and was open at the *Easterly* and *Southerly* side, opposite the steam-boat landing.

It was also proved and admitted, that the defendants usually had a person in attendance upon said dock, to open and shut the gates thereof, for carts with freight to come in and go out; and that such person assisted in taking the lines of the steam-boat to bring her to the dock, on her arrival; and that when the boat was not lying at said dock, this person took charge of such freight as might be brought to him for the boat; which freight, when so received by him, was left upon said dock, near to the usual landing-place of the steam-boat; and that the clerk of the boat, after her arrival at the landing-place, came upon the dock, and took an account of all freight so lying there, if properly marked and directed, and had it placed on board the boat, to be carried, by the defendants, to its place of destination.

The defendants claimed to have proved, that no other person but the clerk was authorized, by the defendants, to receive freight, when the boat was lying at said landing-place; and that when the boat was not at said landing-place, the only person authorized by the defendants to receive freight, was the person before-mentioned in attendance upon the dock.

The plaintiff claimed to have proved, that on the 4th day of *May*, 1848, the box of goods claimed in the declaration to have been lost, which was marked "Mrs. *A. E. Merriam, Meriden, Conn.*," was carted, by *William C. Crawford*, a licensed carman of the city of *New-York*, to the dock aforesaid; and that *Crawford* drove his cart, with the goods, through the gate, and on to the dock, near where the steamboat was then lying; that he then called to some one on board, who appeared to him to be acting in authority, but whom he did not know, and had never seen before nor since, and told him, that there was freight for *Meriden*, to which

*New-Haven,*
July, 1850.

Merriam
*v*
Hartford and
New-Haven
R. R. Co.

the person so addressed replied, " *all right ;*" and the carman thereupon left said goods on the dock, at the usual and ordinary place of depositing freight for the boat.   The plaintiff also claimed to have proved, that it was the established custom of the defendants to receive all goods deposited on said dock for transportation, and duly marked and directed ; and to keep a person to open the gates for the reception of freight ; and that it was usual to deliver all goods for transportation by the defendants in their boat, upon said dock and within said enclosure ; and that said delivery was, by the uniform usage of the defendants, and the understanding of the public, a delivery to them, without any further notice to them.

The defendants claimed they had proved, that said box was never left upon said dock ; and that if it was ever left there, by the carman, that no agent or servant of the defendants who was intrusted to receive freight for the boat, was ever notified thereof, at the time of such delivery, or at any other time ; and that said box was either lost, by the carman, or stolen from the dock.   And the defendants claimed, that if the jury should find from the evidence, what the defendants claimed to have proved, that no other person was authorized by the defendants to receive freight, but said clerk, or the person in attendance upon the dock ; and that neither the clerk, nor such person, was notified, by the carman, of his having brought said box to be transported in the boat, that then the law was so, that there had been no delivery to the defendants.

But the plaintiff claimed, that if the jury should find from the evidence, that the person on board the steam-boat, whom the carman hailed, and who replied as aforesaid to the carman, was, at the time, an officer or other person in authority belonging to the boat, and so the servant of the defendants, though not the clerk or person attending the dock, said delivery on the dock, by the carman, would be in law a good delivery to the defendants: and he also claimed, that if the jury should find, that said dock was a private dock of the defendants, inclosed by them, and if the carman had deposited said goods, duly marked and directed, upon the defendants' private dock and inclosure, and near to where the steam-boat was then lying, and at the usual and customary place of delivery of freight to be transported by the defendants, the goods,

when so deposited, would be duly delivered to the defendants, *New-Haven,*
without any notice thereof to their servants or agents author- *July, 1850.*
ized to receive freight.

Merriam
*v.*
Hartford and
New-Haven
R. R. Co.

The court charged the jury, that in order to make the de-
fendants responsible as common carriers, they must find, that
the goods in question were delivered to them, as such carri-
ers, to be transported ; that a delivery to any person not au-
thorized by them to receive the goods, would be no delivery
to them ; and thereupon the court left it to the jury to say
from the evidence, if they believed said box of goods was left
upon the dock, in the manner testified by the carman *Craw-
ford,* whether the person on board the defendants' boat, whom
*Crawford* notified of his having the freight for *Meriden,*
was an officer of the boat who was authorized to receive
freight.

The court further told the jury, that if the dock where the
goods were claimed to have been delivered, was a public
dock, then a delivery there was no delivery to the defendants,
unless they were properly notified thereof ; but if said dock
was the private dock of the defendants, and in their exclu-
sive use, as claimed by the plaintiff ; and if the goods were
delivered there, in the usual and accustomed manner in which
they received goods for transportation ; then a delivery at
such private dock was a good delivery to them, though their
agents were not notified thereof.

The plaintiff offered his wife as a witness in the cause, and
being objected to as incompetent, she was admitted by the
court.

He also introduced the deposition of *Wm. C. Crawford,* the
carman, who delivered said goods upon the dock in *New-
York ;* and it appearing, that *Crawford* was wholly unknown
in and resided without the state, in the city of *New-York ;*
the plaintiff immediately thereafter, and without any impeach-
ment of *Crawford,* and without any evidence whatever hav-
ing been introduced on the part of the defendants, offered the
testimony of *Alfred Edwards,* to show the general good
character of *Crawford ;* to which the defendants objected ;
but the court overruled the objection, and admitted the testi-
mony of *Edwards,* for the purpose aforesaid.

The plaintiff obtained a verdict ; and the defendants there-
upon moved for a new trial.

New-Haven,
July, 1850.
———————
Merriam
v.
Hartford and
New-Haven
R. R. Co.

*Ingersoll* and *W. B. Bristol*, in support of the motion, contended, 1. That there was not a delivery of the goods to the defendants, sufficient to make them responsible as common carriers. To constitute such delivery, it must be made to the carrier in person; or to his authorized agent in person; or it must be accompanied with notice to the carrier or his agent. The delivery is inchoate until such notice is given; and no usage can change this universal principle of commercial law. *Sto. Cont.* 466. 5 *Petersd. Abr.* 66. 2 *Kent's Com.* 604. *Buckman* v. *Levi*, 3 *Campb.* 414. *Packard* v. *Getman*, 6 *Cowen*, 757. *Blanchard* v. *Isaacs*, 3 *Barb. Sup. Ct. R.* 388. *Frith* v. *Barker*, 2 *Johns. R.* 327. 335. Nor can it make any difference, whether the dock was a private or public dock, in regard to the necessity of notice. He who leaves his goods, though properly marked, in a rail-road depot, without notice to the company or its agents, or who leaves upon the counter of a banking-room his bank-book, with his money in it intended for deposit, instead of handing it to the clerk or cashier, cannot subject the rail-road company or the bank for the loss, if his property is stolen, before they or their agents have notice of its being so left.

2. That if usage could controul the law of delivery, irrespective of notice, the court should have submitted the question of fact, not merely whether the usage claimed was proved, but whether it was such, and had been so long continued and generally acquiesced in, that the jury could say it influenced the conduct of the plaintiff. The jury should have been permitted to pass upon the question, whether the defendant's previous course of business, or their usage, had been such, that the plaintiff had in fact been induced by it to leave his goods exposed upon the dock. The charge was, substantially, that if the jury found a usage, whether long or short, whether the plaintiff had been influenced by it or not, it was, as matter of law, conclusive upon the rights of the parties. This was incorrect. *Rushforth* & al. v. *Hadfield*, 7 *East* 224. *Frith* v. *Barker*, 2 *Johns. R.* 335.

3. That the testimony of the plaintiff's wife should have been excluded. Prior to the statute of 1848, the wife clearly could not be a witness in her husband's favour. By that statute, the law was so altered that *interest in the event of the suit* should not disqualify a witness. The wife, in this case,

has not such an interest. She is excluded as a witness, not on the ground of interest merely, but on principles of *public policy,* which lie at the basis of civil society. *Greenl. Ev.* 384. & seq. 2 *Kent's Com.* 178. 180. *Stanton* v. *Willson,* 3 *Day* 37. 56.

4. That the deposition of *Edwards,* to sustain the witness *Crawford,* before he had been in any way impeached, should have been excluded. That deposition relates to *Crawford's* character for integrity, and is not confined, as it should have been, if admissible at all, to his character for *truth.* His character, in no other respect than for truth, could have been questioned. 1 *Sw. Dig.* 767. 1 *Greenl. Ev.* § 461. 469.

*Kimberly* and *Doolittle,* contra, contended, 1. That, the charge of the court as to the delivery of the goods to the carrier, was correct, within the strict rule of law on the subject. *Sto. Bail.* 341. 3 *Stark. Ev.* 334. 2 *Kent's Com.* 603. *Gibson* v. *Culver,* 17 *Wend. R.* 305.

2. That the wife of the plaintiff was a competent witness. In the first place, under the late statute, she was not disqualified, by reason of interest *or otherwise. Stat.* 86. Secondly, nor has the wife, in this state, ever been excluded, on the ground of public policy, when offered in support of her husband's claim. *Stanton* v. *Willson,* 3 *Day* 37.

In *Massachusetts,* she is holden a competent witness to prove the entries made in her husband's book. *Littlefield* v. *Rice,* 10 *Metc.* 287. In *Vermont,* she is holden a competent witness in book debt, if a party with her husband. *Andrus* & ux. v. *Foster,* 17 *Verm. R.* 556. *Gay* & ux. v. *Rogers,* 18 *Verm. R.* 342.

3. That the testimony of *Edwards* to the good character of *Crawford,* was properly admitted.

In the first place, the witness, *Crawford,* was a *stranger,* wholly unknown, and gave his deposition in *New-York. The State* v. *De Wolf,* 8 *Conn. R.* 101. *Rogers* v. *Moore,* 10 *Conn. R.* 13. *Howell* & al. v. *Brown, Sup. Ct. N. Haven Co. Oct.* 1848. *cor. Storrs,* J. Secondly, if the character of the witness be impeached, by cross-examination, or by contradictory evidence, it is competent to support him, by general evidence of good character. 1 *Stark. Ev.* 147, 8. 1 *Phill. Ev.* 306, 7. The *People* v. *Rector,* 19 *Wend.* 584.

*New-Haven,*
July, 1850

———

Merriam
*v.*
Hartford and
New-Haven
R. R. Co.

*New-Haven,*
*July, 1850.*

Merriam
*v*
Hartford and
New-Haven
R. R. Co.

610, 11.    Thirdly, such evidence is particularly proper, where, as in this case, the *position* of the witness subjects him to suspicion, involving his integrity, as well as his veracity.

4. That the court will not grant a new trial, if no injustice has been done, although the evidence was technically inadmissible.

STORRS, J.    The plaintiff claimed to have proved, on the trial, that the property, to recover the value of which this action was brought, was delivered by him, to be transported by the defendants, as common carriers, from the city of *New-York* to *Meriden,* on a dock in said city, which was the private dock of the defendants, and in their exclusive use, for the purpose of receiving property to be transported by them ; and that it was delivered there, in the usual and accustomed manner in which the defendants received property for transportation ; and the court charged the jury, that such delivery at said dock, was a good delivery to the defendants, to render them liable for the loss of the property, although neither they nor their agents were otherwise notified of such delivery.    The defendants insist, that they were not chargeable for it, unless they had express or actual notice of such delivery ; and that the jury should have been so instructed.

A contract with a common carrier for the transportation of property, being one of bailment, it is necessary, in order to charge him for its loss, that it be delivered to and accepted by him for that purpose.    But such acceptance may be either actual or constructive.    The general rule is, that it must be delivered into the hands of the carrier himself, or of his servant, or some person authorized by him to receive it ; and if it is merely deposited in the yard of an inn, or upon a wharf to which the carrier resorts, or is placed in the carrier's cart, vessel, or carriage, without the knowledge and acceptance of the carrier, his servants or agents, there would be no bailment or delivery of the property, and he, consequently, could not be made responsible for its loss.    *Addison on Cont.* 809.    But this rule is subject to any conventional arrangement between the parties in regard to the mode of delivery, and prevails only where there is no such arrangement.    It is competent for them to make such stipulations on the subject as they

see fit ; and when made, they, and not the general law, are
to govern.   If therefore, they agree that the property may
be deposited for transportation at any particular place, and
without any express notice to the carrier, such deposit merely
would be a sufficient delivery.   So if, in this case, the defend-
ants had not agreed to dispense with express notice of the
delivery of the property on their dock, actual notice thereof
to them would have been necessary ; but if there was such
an agreement, the deposit of it there, merely, would amount
to constructive notice to the defendants, and constitute an ac-
ceptance of it by them.   And we have no doubt, that the
proof by the plaintiff of a constant and habitual practice and
usage of the defendants to receive property at their dock for
transportation, in the manner in which it was deposited by
the plaintiff, and without any special notice of such deposit,
was competent, and in this case, sufficient to show a public
offer, by the defendants, to receive property for that purpose,
in that mode ;   and that the delivery of it there accordingly,
by the plaintiff, in pursuance of such offer, should be deemed
a compliance with it on his part ;   and so to constitute an
agreement between the parties, by the terms of which the
property, if so deposited, should be considered as delivered to
the defendants, without any further notice.   Such practice
and usage was tantamount to an open declaration, a public
advertisement, by the defendants, that such a delivery should,
of itself, be deemed an acceptance of it by them, for the pur-
pose of transportation ;   and to permit them to set up against
those who had been thereby induced to omit it, the formality
of an express notice, which had thus been waived, would be
sanctioning the greatest injustice, and the most palpable
fraud.

The present case is precisely analogous to that of the de-
posit of a letter for transportation in the letter-box of a post-
office, or foreign packet vessel, and to that of a deposit of
articles for carriage in the public box provided for that pur-
pose, in one of our express offices ; where it would surely not
be claimed, that such a delivery would not be complete,
without actual notice thereof to the head of these establish-
ments or their agents.

The only authorities cited by the defendants, to show that
an express notice to them was necessary in this case, are

New-Haven,
July, 1850.

Merriam
v.
Hartford and
New-Haven
R. R. Co.

*Buckman* v. *Levi,* 3 *Campb.* 414. and *Packard* v. *Getman,* 6 *Cowen,* 757.    These cases are distinguishable from the present, in this respect, that there was not, in either of them, a claim of any particular habit or usage of the defendant, which should vary or modify the general principles of law in regard to the mode of delivering the property.    They were, therefore, decided merely on those general principles, unaffected by any special agreement between the parties on that subject, inferable from such usage.    But in several of the cases cited, it was held, that where the carrier had been in the habit of receiving property for transportation in a particular mode, a delivery to him in that mode, was sufficient.

The defendants except also to this part of the charge, on the ground, that, if their particular usage as to the reception of property could controul the general law of delivery, the court should have submitted to the jury the question of fact, whether such usage influenced the plaintiff in the course which he took in regard to the delivery of the property, and did not instruct them, as matter of law, that the delivery, as claimed to be proved by the plaintiff, was sufficient.    We think, that it would not be going too far to say, that when the plaintiff, in delivering the property, conformed to the usage of the defendants in receiving it, which was different from the usage which generally prevails in that business, he is presumed to have known of that usage of the defendants, and to have been influenced by it ; and it does not appear, that there was any evidence to repel such presumption.    But without deciding that point, it is a decisive answer to this objection, that it was not only not made on the trial, but the defendants placed this part of their defence on the sole ground of a want of notice to them of the delivery.    To no other matter in this branch of the case was the attention of the court called.    The judge therefore had a right to infer, that no question was intended to be made, as to whether the plaintiff was influenced in his conduct, by the usage of the defendants.    His attention would naturally be drawn from that subject, by the course taken by the parties, in raising the question of notice, and no other.    It was the duty of the defendants distinctly to direct the attention of the judge to the point which he now claims was overlooked, if he wished to have it noticed.    In regard to his instruction to the jury, that the delivery, if made in the

*New-Haven,*
July, 1850.

Merriam
*v.*
Hartford and
New-Haven
R. R. Co.

usual and accustomed manner in which the defendants received goods for transportation, was sufficient, we think that it was correct, as there was no evidence adduced by the defendants to qualify or affect the proof of the plaintiff on that subject. The charge, therefore, was unexceptionable.

2. We are of opinion that, by a just construction of the 141st section of the act " for the regulation of civil actions," (*Stat.* 86.) the wife of the plaintiff was a competent witness in his behalf. It was the express object of that section to remove the common law disqualification of persons as witnesses, in all civil suits, by reason of their having an interest in the event of the same. In legal contemplation, the husband and wife are one person : their interests are, therefore, identical. This is the ground of their exclusion, by the common law, as witnesses for each other. The reason given by *Blackstone*, why they are not to be admitted to be witnesses for each other, is, that it would contradict the maxim of law, " *nemo in propria causa testis esse debet :*" (1 *Comm.* 443.) and *Phillips* says, " they cannot be witnesses for each other, because their interests are absolutely the same."

It is said, however, that the reason for this exclusion, is not founded wholly upon their identity of interest, but partly on a principle of public policy, which deems it necessary to guard the confidence of married life ; and that the statute, by its terms, applies only to cases where the interest of the party was the sole ground of exclusion. This argument, however, entirely fails, because that reason applies only where the husband and wife are called to testify against each other ; and in such cases, we admit that it has very great weight.

But were it otherwise, we think that this would be too narrow a view of the statute and of the intention of the legislature in making it. Its language is substantially like that of the statute making all interested persons competent as witnesses in the action of book-debt; and its object, although broader, is the same. The latter statute has been in existence since the earliest settlement of the state. Under it the wife, in that action, has always been admitted as a witness for the husband ; and this construction of that law was sanctioned, by the case of *Stanton* v. *Willson* & al. 3 *Day*, 37. The law now in question should receive a similar construction.

*New-Haven.*
*July, 1850.*

Merriam
*v.*
Hartford and
New-Haven
R. R. Co.

3. The remaining question respects the admissibility of the deposition of *Edwards.* He testified, in that deposition, to the general good character of *Crawford,* a previous witness, for honesty, and in every other respect, which of course included his character for veracity. The general rule is, that a witness cannot be supported by evidence of his general character for truth, excepting after a general impeachment of it; but we have adopted an exception to it, where the witness is in the situation of a stranger; in which case, we allow him to be supported, by evidence of his general good character for veracity, without such impeachment. *Rogers* v. *Moore,* 10 *Conn. R.* 12. But evidence of his good character, in other respects, is not admissible for that purpose. Therefore, as *Crawford* was a stranger, that part of the deposition which related to his character for truth, was admissible; but the remainder of it, which spoke of his character in other respects, was not. The objection in this case to the deposition, was a general one; but a part of it being admissible, it would not have been proper for the court to exclude it. The objection should have been made, specifically, to that part of it which was inadmissible.

We do not, therefore, advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.